## THE STATE OF ARKANSAS VS. THE PRESIDENT AND DIRECTORS OF THE BANK OF WASHINGTON.

If the defendant file several pleas setting up precisely the same grounds of defence, though differently stated, the Court may require him to elect upon which he will rely, then strike out the others, (14 *Ark.* 186; 17 *Ib.* 89:) but the court would have no right to strike out either plea without allowing the defendant to make his election. (5 *Ark.* 140; 1 *Eng.* 198; 14 *Ark.* 411.)

On an issue to the plea of *nul tiel corporation* to a suit in the corporate name of a Bank, it appeared that the charter of the Bank had expired by limitation, but that she had made a general assignment of her assets to Trustees, who were authorized by law to sue in the corporate name of the Bank upon all choses in action, etc., due to her: *Held,* that the Bank was so far a corporation as to make it competent on the part of the Trustees to sue in her corporate name on any of the choses in action transferred to them, notwithstanding the expiration of the charter.

A general deed of assignment to trustees does not vest in them the legal title to the

bonds held by the assignor, so as to authorize them to sue thereon in their own names. (6 *Eng.* 106; 7 *Ib.* 74; 4 *Ark.* 361; 5 *Ib.* 536.)

The State is not liable for interest on the semi-annual instalments of interest upon the bonds issued by her to the State Bank and Real Estate Bank, upon default of the payment of such interest.

[But if the State were liable for interest upon the overdue instalments of interest upon such bonds, the rate would be 5 *per cent.* upon the bonds bearing 5 per cent. interest, and not the rate fixed by law upon contracts generally, *per* HANLY. J.]

It is not necessary that the holders of the State bonds issued to the State and Real Estate Banks, should prove a demand of payment of the interest thereon, at the place stipulated in the endorsements of the bonds for payment: if the State had funds at the place of payment to meet the instalments of interest it should be made to appear by way of defence.  (14 *Ark.* 191.)

*Writ of error to the Circuit Court of Pulaski county.*

Hon. WILLIAM H. FEILD, Circuit Judge.

S. H. HEMPSTEAD for the plaintiff.   Interest on interest is not allowable.   8 *Mass.* 455; 4 *Rand.* 406; 23 *Pick.* 169; 5 *B. & A.* 34; 1 *Vesey jr.* 99; 1 *J. C. R.* 13; 17 *Conn.* 243; 7 *Barb.* 632; 11 *Paige* 231; 2 *Cush.* 97; 17 *Mass.* 417; 11 *Mctc.* 210; 7 *Greenl.* 48; 6 *J. C. R.* 313; 2 *A. K. Marsh.* 335; 5 *Paige* 98; 3 *H. & M.* 89.

PIKE & CUMMINS, for the defendant, as to the right of the corporation, and not the trustees, to sue, cited the several acts of Congress in reference to the Bank; and upon the point, that the Court below properly allowed interest upon the semi-annual instalments of interest overdue on the bonds, and for which suit was brought, admitting that the cases of *Ferry vs. Ferry,* 2 *Cush.* 92; *Hastings vs. Wiswall,* 8 *Mass.* 455; *Dean vs. Williams,* 17 *id.* 417; *Von Hemert vs. Porter,* 11 *Metc.* 218; *Wilcox vs. Havland,* 23 *Pick.* 168; *Doe vs, Warren,* 7 *Greenl.* 48; *Connecticut vs. Jackson,* 1 *J. C. R.* 314; *Van Benschoton vs. Lawson,* 6 *J. C. R.* 314, were against the point, cited the following authorities as outweighing them: *Pierce vs. Rowe,* 6 *N. Hamp.* 179; *Drew vs. Drew, id.* 40; *Sedgwick on Dam.* 407; *Kennon vs. Dickens,* 1 *Taylor* 131; *Wr'ght vs. Wright,* 2 *McCord's Ch. Rep.*

202; *Rhodes vs. Bythe,* 5 *B. Mon.* 336; *Bowles & wife vs. Drayton,* 1 *Dessau.* 489; *Watkinson vs. Root,* 4 *Hamm.* 373; *Hollingsworth vs. The City of Detroit,* 3 *McLean* 472; *Austin vs. Imus,* 23 *Verm.* 291; *Gibbes vs. Chisholm,* 1 *Nott & McCord* 38; *Singleton vs. Allen,* 2 *Strobh. Eq.* 172; *Doig vs. Barkley,* 3 *Richard.* 126; and contended that the inducement to both capitalists and persons of small means, to invest in these bonds, as in other States, was the punctual payment of the interest. Of many stocks and funds, it is not expected that the principal will ever be paid. A man invests so much in stocks, that he may derive therefrom a fixed and certain income, precisely as if, with the same capital, he purchased an annuity· The State cannot redeem and pay off its bonds at pleasure. The holders have a vested right to receive the interest regularly during the whole time fixed for the bonds to run. Bonds with the principal redeemable at pleasure would not sell at all.

The contract, in all such bonds is, in effect, to pay so much money every six months, and so much at a definite period. The semi-annual payments are really as much principal, as is the principal sum itself. The interest on public stocks is like the annual rents of land—a semi-annual payment, which the State agrees, with a pledge of her faith and honor, that she will pay with punctuality. If she does not pay punctually, and after long delay declines to pay interest on these semi-annual payments, she violates her plighted faith.

When a man invests his capital in stocks, it is the dividends or payments of interest that compose his fortune,

When suit is brought on such bonds, for overdue instalments of interest, the judgment is not given for such interest as incident or accessary of the debt. The debt is not due. Judgment is not given for the interest, by way of damages for the detention of the debt, for that is done only where the debt is *unjustly* detained, contrary to the contract. What is unjustly detained, contrary to the contract, are the instalments of interest themselves. The instalments of interest stipulated to be paid are themselves independent principal sums.

Mr. Justice Hanly delivered the opinion of the Court.

This is an action of covenant brought by the defendants in error—plaintiffs below—on fifty-two State bonds, partly five per cents, issued to the State Bank, and partly six per cents, issued to the Real Estate Bank—the interest on each being payable semi-annually. The plaintiffs below claim title to the bonds declared on by assignment from the obligees therein named through several by due course.

The State, at the return term of the writ, appeared to the action, and interposed her eleven pleas in bar thereof, which were, in substance, as follows, to wit:

1. *Nul tiel corporation.*

2. Inducement that the charter of the Bank of Washington expired 4th July, 1844, and contained no provision authorizing it to sue after that time—with traverse, *nul tiel corporation.*

3. That on the 3d July, 1844, the Bank of Washington assigned her assets, including the bonds, to one James Adams, and he to eight trustees; by which the legal title to the bonds in question vested in such eight trustees; with traverse of title in the plaintiff below.

4. Assignment by the Bank of Washington to the eight trustees named in the third plea, on the 3d July, 1844, with like traverse as in third plea.

5. That the Bank was not holder and assignee of the bonds as alleged.

6. That the plaintiffs below did not demand payment of the instalments of interest as they fell due, at the places where they were payable, averring that, as a consequence, the defendant below became and was released and discharged from all liability thereon.

7. As to the 5 per cents, no demand on the Bank of the State, and no notice to the State of the non-payment by the, Bank was given to the State.

8. As to the 6 per cents, no demand on the Real Estate Bank, and no notice to the State of the non-payment by the Bank.

9. No suit against the Banks to recover the interest, nor were they prosecuted to insolvency.

558 CASES IN THE SUPREME COURT

The State of Arkansas vs. The Bank of Washington [JANUARY

10. Payment of all the interest due on the bonds at the time suit was brought.

11. Covenants performed.

The 2d and 5th pleas were stricken out, on motion of the plaintiffs below, and exceptions therefor by the defendant. Issue was taken to the 1st, 4th and 10th pleas. Demurrers were interposed and sustained to the 3d, 6th, 7th, 8th, 9th and 11th pleas, and exceptions by the defendant below in consequence thereof.

The cause, upon the issues thus formed, was submitted to a jury, who found each issue for the plaintiffs below, and assessed their damages at $52,513, for which judgment was rendered by the Court.

The State, by her attorney, moved the Court for a new trial on the following grounds, *to wit:*

1. That the Court permitted the plaintiffs to give improper evidence to the jury, against the objection of the defendant.

2. That the Court gave the instructions asked for by the plaintiffs, against the objections of the defendant.

3. That the Court refused to give the six instructions asked for by the defendant.

4. That the verdict is contrary to law.

5. That the verdict is contrary to the evidence and not warranted by it.

6. That the damages found by the jury are excessive.

7. That the Court, against the objections of the defendant, allowed the plaintiffs to fill up the blank assignments, on said bonds, at the trial, and after the jury had been sworn.

This motion being considered by the Court, was overruled, and the defendant, by her attorney, excepted, setting out, in her bill, all the evidence given at the trial, the facts relative to the filling up the several blank assignments on the different bonds set forth in the declaration, the several instructions given at the instance of the plaintiffs below, and those asked for by the defendant and refused by the Court, the several pleas stricken out, and such other facts as may be involved in the various grounds set forth in the motion for a new trial. We shall only

set forth such facts as may be necessary to illustrate the several points upon which the judgment of this Court is invoked by the assignment and briefs of counsel, and, in doing so, shall introduce them at the time those points are respectively being considered.

The defendant below brought error, upon which the cause is pending in this Court. Sundry errors have been assigned; but several of them seem to have been abandoned, or else waived by counsel in their respective briefs. We propose, therefore, only to consider those to which our attention has been specially called and directed by the counsel at bar.

1. It is insisted by the defendant below that her second plea should not have been stricken out; whilst it is maintained by the plaintiffs that such plea was properly stricken out, for the reason, that it was substantially a repetition of the *first* plea.

The doctrine on this subject may be thus stated: Where the defendant files several pleas, setting up precisely the same grounds of defence, though differently stated, the Court may require him to elect upon which he will rely; and when the election is made, then strike out the other. See *Sumpter vs. Tucker*, 14 *Ark. R.* 186. *Davis vs. Calvert*, 17 *Ark. R.* 89.

We apprehend the Court, without allowing an election of pleas, would have no power or right to strike out either, on account of the same facts being set up in each. See *Sullivant & Thorn vs. Reardon*, 5 *Ark. R.* 140. *Wilson & Turner vs. Shannon & wife*, 1 *Eng. R.* 198. *Sanger et al. vs. State Bank*, 14 *Ark. R.* 411.

We therefore hold that the Court below erred in striking out the second plea of the defendant, without allowing him to elect between that and the *first* one.

2. It is also insisted by the plaintiffs in error that the Court below erred in sustaining the plaintiffs' demurrer to her third plea.

The motion set up in this plea is, in effect, that the defendants in error had no title to the bonds declared on. Assuming it to be true, as the parties in the Court below seem to have conceded, that the several acts of Congress, abstracts from

**560** CASES IN THE SUPREME COURT

The State of Arkansas vs. The Bank of Washington. [January

which are stated below, are private acts, and as such should be proved as other material facts in the cause, we think there can be no doubt, but that the *third* plea is good in substance and form, and consequently an effectual bar to the action to which it applies, if confessed, as it is, in effect, by the demurrer. We, therefore, hold that the Court below erred in sustaining the demurrer to this plea.

3. It is further insisted by the plaintiff in error that the Court below erred in giving the instructions asked for by the plaintiffs below, and refusing to give those moved for by the defendant below.

Those given on the part of the plaintiffs below, are as follows:

1st. That if it appears to the jury that there is by act of Congress such a corporation as the President and Directors of the Bank of Washington still in existence for the purposes of this suit, the jury must find for the plaintiffs on the plea of no such corporation; and it is sufficient evidence of that fact, if the trustees of that Bank are authorized to sue in the name by which the Bank was incorporated, notwithstanding its charter had expired.

2d. That if the jury find there was no such assignment by the said Bank as to vest the property of the Bank in the trustees in such manner as to require them to sue in their own names, but they might by such suit use the name by which the Bank was incorporated, then the jury will find for the plaintiffs on the plea of assignment.

3d. That if the plaintiffs are entitled to payment, they are entitled, as a part of the damages, to recover interest at *six per cent.* upon the amount of interest on each bond falling due half yearly from the time when each should have been paid to the time of trial, in addition to the sums of half yearly interest.

4. That the bonds in the declaration mentioned did not so pass by a general deed of assignment to the trustees as to pass the legal title to them, and require them to sue in their own names.

OF THE STATE OF ARKANSAS. **561**

TERM, 1857.]    The State of Arkansas vs. The Bank of Washington.

Those instructions proposed by the defendants below, and refused to be given by the Court, are as follows:

1. That unless it has been shown by the evidence, that the plaintiffs, as holders of the bonds mentioned, demanded the payment of interest semi-annually at the place named in the endorsement of said bonds respectively, the plaintiffs cannot recover in this action.

2d. That unless it has been proved to the satisfaction of the jury that the plaintiffs, as holders of said bonds offered in evidence, demanded the payment of interest semi-annually at the places where the endorsements made the interest payable, and gave the State notice of such non-payment, the plaintiffs cannot recover in this action.

3d. That on the law of the case the plaintiffs are not entitled to recover in this action, and the jury should find as in case of a non-suit.

4th. That the acts of Congress put in evidence by the plaintiffs, are not sufficient to prove there is such a corporation, for the purposes of this suit, as alleged in the declaration, and the jury should find that issue for the defendant.

5th. That unless it has been proved to the satisfaction of the jury, that the provisions of the act of Congress extending the charters of the District Banks, approved 17th June, 1844, were accepted by the Bank of Washington, the plaintiffs in this suit cannot avail themselves of the benefit thereof; and if the jury should further find from the evidence that the assignment was made as alleged in the 4th plea, they should find for the defendant.

6th. That if the jury believe from the evidence that an assignment was made as alleged in the 4th plea, they should find for the defendant.

We propose to consider the several instructions given at the instance of the plaintiffs below, as well as those refused by the Court proposed by the defendant, in connection with the evidence to which they relate, and in reference to each other in their order on the record.

As to the *first* instruction given at the instance of the plaintiffs:—

The plaintiffs introduced as evidence in support of the issues on their part sundry acts of Congress, in substance, as follows:

By act of 15th February, 1811, (2 *Stat. at Large* 625,) a Banking corporation was created in the District of Columbia by the name and style of " The President and Directors of the Bank of Washington;" and the charter was to continue for ten years from the 4th of March, 1811. By the 21st section it was declared that the act should, to all intents and purposes, be deemed and held a public act.

On the 2d of March, 1821, by act of that date (3 *Stat. at Large* 618,) the said act creating that corporation was extended and limited to the 3d day of March, 1836, and by sec. 20, the act was declared to be a public act.

By act of February 9th, 1836, (5 *Stat. at Large*,) the act of incorporation of the Bank of Washington was " renewed, continued in full force and limited " to the 1st day of October, 1836.

By act of July 2d, 1836, the same charter was extended till the 4th of July, 1838. 5 *Stat. at Large* 69.

By act of 31st May, 1838, the same charter was extended to the 4th day of July, 1840, on certain conditions. 5 *Stat. at Large* 232.

By the act of 25th May, 1838, the charter of the Union Bank of Georgetown was extended till the 1st of July, 1842; and the stockholders were authorized to elect not more than three trustees to have the same powers as the President and Directors, and to whom all the property, choses in action, rights and interest of the corporation should be conveyed in trust. It was provided that suits by or against the corporation should not abate or discontinue, and that there should be no necessity for revivor, and that in all actions, legal and equitable, and in all process by and against said corporation the name and style thereof should be the same. The President and Directors were to file a declaration of assent in writing, in the office of the Sec-

retary of the Treasury, within six months after the passage of the act, accepting its provisions, and the act was declared to be a public act.   5 *Stat. at Large* 229.

By act of July 3d, 1840, the provisions of the last cited act were extended to the Bank of Washington; it being provided that wherever the 1st of July, 1838, occurred in that act, it should be read the 4th of July, 1840, and wherever the 1st of July, 1842, occurred, it should be read the 4th of July, 1844; by which provision the existence of the Bank was continued to this latter day.   6 *Stat. at Large* 802.

On the 25th of August, 1841, by act of that date, the charter of the Bank of Washington was revived, and all the rights, powers, privileges, immunities, limitations, prohibitions and restrictions contained in it, were renewed, extended and made applicable to said Bank, and to its President, Directors and other officers and stockholders in the same manner and to the same extent as was granted and provided by said charter, and the laws in force on the 1st of January, 1838.   Provision was made for the election of nine Directors, a President and other officers, to hold their offices in the same manner as if the charters had not expired, and as if such officers had been chosen at the annual election.   The act was to continue in force until July 4th, 1844.   And the act of 24th May, 1838, to extend the charter of the Union Bank of Georgetown, was extended until July 1st, 1847.   5 *Stat. at Large* 449.

By act of June 17th, 1844, it was provided, that all suits then or afterwards commenced, by or against either of the Banks of the District of Columbia, whose charter was to expire on the 4th of July, 1844, should not abate or be estopped by reason of the expiration of the charter, but should proceed to final judgment and execution as though the charter continued in existence.

And it was also provided, that the Trustee or Trustees, assignee or assignees, receiver or receivers, who might be appointed to collect and receive the assets of any Bank whose charter should so expire, and to adjust, settle and liquidate its debts, should have full power to commence and institute all

necessary actions, suits or other proceedings, in law or equity, in the name of said Bank, and prosecute the same to final judgment and execution.    5 *Stat. at Large* 677.

Under the provisions of the act of the 3d July, 1840, extending the provisions of that of May 25th, 1838, (concerning the Union Bank of Georgetown) to the Bank of Washington, and other Banks in the District of Columbia, an assignment was made to Trustees of all the assets of the Bank of Washington, on the 3d July, 1844, as was shown by the defendant in the Court below.    The trustees, under this general assignment, it is manifest from the evidence furnished by the record before us, in bringing this suit, have used " the name of the Bank" as they seem to have been expressly authorized to do by the act of the 17th June, 1844; that corporate name of the Bank being " The President and Directors of the Bank of Washington;" and we think there can be no doubt of the fact, from the evidence furnished by the record, that, at the time this suit was commenced, the President and Directors of the Bank of Washington were so far a corporation as to make it competent on the part of the Trustees to sue in that name on any of the choses in action transferred to them by the general assignment given in evidence at the trial, as appears by the transcript, under the act of Congress before herein specially noticed.    The fact, that the charter of the Company had expired by limitation, makes no difference.    The Legislature, in anticipation of its expiration, on the 17th June, 1844, seems to have expressly authorized the Bank to do what was absolutely performed by them on the 3d July, 1844, and declared thus in advance, that the Trustees, to whom the assignment was contemplated to be made, should possess the powers claimed for them in this suit.

Entertaining the views expressed on this point, we see no valid objection to this instruction, and therefore hold that the Court below did not err in giving it to the jury.

As to the *second* instruction given at the instance of the plaintiffs:—

The question involved in this instruction has, virtually, been determined when considering and disposing of the first one.    In

addition to what has already been said on the subject, we may here add that the general deed of assignment from the Bank did not invest in the Trustees the legal title to the bonds sued on so as to authorize them to sue thereon in their own names. The most that the Trustees could claim under the deed of assignment, independent of the acts of Congress in question, is an investiture of an equitable interest in the choses in action belonging to the Bank at the time, and thus secure to them an interest which a Court of law could only respect and protect, but which could only be enforced and be made fully effectual to them in a Court of Equity. This we regard as the well settled doctrine of this Court, and is not now open to controversy or question. See *Biscoe et al. vs. Sneed et al.*, 6 *Eng. R.* 106. *Roane et al. vs. Williams et al.*, 7 *Eng. R.* 74. *Conway ex parte*, 4 *Ark. R.* 361. *Buckner et al. vs. Real Estate Bank*, 5 *Ark. R.* 536. We, therefore, hold there is no error in this instruction.

As to the *third* instruction given at the instance of the plaintiffs:—

The legal effect of this instruction was to direct the jury in the computation of damages, in case they should find the breaches and issues for the plaintiffs, to allow interest upon the interest found due on the bonds declared on, semi-annually, from the times that each and every instalment of interest should have been paid to the time of the trial and date of the computation. The bonds in question do not warrant this instruction. The State only obligates herself by them to pay, semi-annually, five and six per cent. interest on the amount of each bond bearing the particular rate of interest. No obligation is imposed by the terms of the bonds to pay interest upon interest, even if the State were a private person. It has been said by this Court, on a former occasion, that the State is not liable for interest in any case, unless by *express agreement she makes herself so.* See *State vs. Thompson use, etc.*, 5 *Eng. R.* 61. But regarding the State as an individual or citizen, and we apprehend, as before intimated, she cannot be held liable upon these bonds for interest upon interest; for it seems to be the better opinion that a contract entered into, in *advance* of the accrual

of interest, to pay interest upon it, should it not be paid at the time agreed, will not be enforced, for the reason, as it is said, that Courts will not lend their aid to enforce the payment of compound interest unless upon the promise of the debtor made *after* the interest, upon which interest is demanded, has accrued; and this rule is adopted, not because such contracts are usurious or savor of usury, unless very remotely, but on grounds of public policy, in order to avoid harsh and oppressive accumulations of interest. See 2 *Parsons on Cont.* 430, and cases cited in notes. *Wilcox vs. Howard*, 23 *Pick.* 167. 11 *Paige R.* 228. 1 *Barb. R.* 627. 8 *Blackf. R.* 158. 2 *Cush. R.* 92. *Doe vs. Warren*, 7 *Greenl. R.* 48. 1 *Amer. Lead. Cases*, 341, 371, and cases there cited; also the cases cited by the defendant's counsel in his brief.

But, in the case we are considering, there is no contract in express terms to pay interest upon interest. If the bonds in question impose any such obligation, it can only be derived from implication, or the effect of the contracts viewed in reference to the law as it existed at the time the bonds in question were made. In such case, we apprehend, but few adjudicated cases can be found, even in this country, holding that compound interest may be collected. We are aware that the spirit of the law is somewhat undergoing modification on the subject, but the modification, which the Courts seem disposed to make, does not go farther than to enforce contracts, in *express terms* to pay interest upon interest, made in advance of the accrual. See 2 *Parsons on Cont.* 430. *Pierce vs. Rowe*, 1 *N. H. R.* 183. *Pawling vs. Pawling*, 4 *Yeates R.* 220. *Kennon vs. Dickens*, *Taylor's R.* 235. *Gibbs vs. Chisolm*, 2 *Nott & McC. R.* 38. *Taliafero's exr. vs. King's ad.*, 9 *Dana. R.* 331; also the cases cited in the plaintiffs brief.

We do not feel ourselves authorized or warranted to go in advance of the *reform*, if it may be justly considered such, in the law, indicated by those latter cases, but must be content to endeavor to administer the law as we find it in the elementary books, and the reports of the decisions of a majority of the highest Courts of the Union, supported, as they evidently are,

by a uniform and almost unbroken current of authority from the Courts of Great Britain. If the law, as we find it, is discovered to be impolitic or oppressive upon the citizens, the arguments addressed to us by the counsel for the plaintiffs might be effective of some good, if addressed to the law making power of the State, whose duty it is to weigh such considerations, and deal with questions involving such inquiries. We hold, therefore, in this case, regarding the State as a citizen or individual, that no obligation is imposed on her, by the terms of the bonds declared on, to pay interest upon interest, and that, therefore, the Court below erred in instructing the jury as manifested by the one we are now considering.

The instruction, however, is clearly erroneous upon principle, on another ground, in my opinion. The jury were instructed that they might allow six per cent. interest by way of damages, upon the computation of the interest due on *all the bonds*, as well those bearing *five*, as those bearing *six* per cent. interest. If the State had obligated herself in advance to pay interest upon the interest, in case it was not paid at the time appointed, without expressing what rate of interest she would pay in that event, (conceding the proposition that this contract would be enforced under the law as it is generally administered,) I apprehend that no greater rate of interest would be allowed upon the interest in arrear than that allowed upon the principal by the terms of the bonds themselves; for, in my opinion, the law would intend in such case, that the parties having fixed by contract, the rate of interest for the forbearance of the principal, would establish the same rate for the withholding or the forbearance of the interest accruing thereon; for the reason, that it could not be presumed that the forbearance in the one case would be more deleterious or advantageous to the creditor or debtor, than in the other, and consequently where the rate of interest for the forbearance of the principal was fixed at five per centum semi-annually, it was also agreed, by implication, that if the interest should not be paid at the stated times, that the amounts of interest withheld should only draw

interest at the same rate, that is to say, five per centum semi-annually. Thus leaving the interest on the interest to be determined by the contract of the parties instead of the effect and operation of the law on the subject of interest. It is but just to the Chief Justice that I should say that the opinion expressed on this latter view of the subject, is my individual opinion, and for which the Court is in no wise responsible. My apology for obtruding my individual opinions upon the professional public in the case before me, is derived from the novelty of the question itself, and its peculiar appropriateness in this connection, coupled with the desire on my part, that the attention of the bar should be directed to it, in the hope, that if another occasion should arise the question would be so presented to the Court as to require of them an expression having the sanction of an adjudication, when, aided by the learning and researches of counsel, my mind would be either confirmed in its present impressions, or else disabused of them.

We hold the instruction as unwarranted by the law, and therefore erroneous.

As to the *fourth* instruction given at the instance of the plaintiffs:

We have already disposed of this when considering the *second* instruction, and therefore hold as to this, as we have held in reference to that.

As to the instructions proposed by the defendant below, and which were refused by the Court, we will proceed to consider and dispose of them in their order, so far as they have not already been disposed of whilst considering and passing upon those given at the instance of the plaintiffs.

As to the *first* instruction offered by the defendant, and refused by the Court:

No demand of the interest on the bonds declared on, accruing semi-annually, was necessary to be made at the place where the payment of the interest was fixed by the terms of the contract, before the State could be sued, as assumed by this instruction.

As held in *Curran vs. the State and State Bank*, 15 *How. U. S. R.* 304, the State, by the terms of the bonds sued on, is the principal, and, indeed, only primary debtor. No demand of either principal or interest was therefore necessary to fix the liability of the State in a suit on those bonds. See *Pryor vs. Wright*, 14 *Ark.* 131. *Story on Prom. notes, sec.* 228.

If the State had really made a deposit of funds where the interest was payable, and those funds had been permitted so to remain, without producing any thing to defendant, from that time to the period of the trial, and those facts had been made to appear by proof, then there can be no doubt, we think, that the plaintiffs could not have recovered interest from the State. But this concession does not establish the proposition, that demand of interest was necessary to fix a liability to pay interest on the State. In the case we have supposed, it would have been a defence against the demand of interest based on equitable principles; such, however, as the laws recognize, and are ever ready to enforce and protect.

As to the other instructions moved for by the defendant, and refused by the Court, they have either been disposed of in the foregoing, or else seem to have been waived or abandoned by the counsel for the defendant in his brief. We do not, therefore, purpose noticing them more at length.

It may not be amiss for us to state, before dismissing the entire cause, that the record presents several minor points which we have not noticed in this opinion. Our apology for not doing so is derived from the fact that the counsel have not seen fit to press them upon the consideration of the Court, but on the contrary, appear rather to have abandoned them, relying upon the more important and imposing ones which we have just considered and disposed of.

On view of the whole record, and the several errors held to exist therein, the judgment of the Pulaski Circuit Court is, therefore, reversed, and the cause remanded with directions that a new trial be awarded the defendant below, and that the cause be proceeded in consistent with this opinion.

37

Let the judgment be reversed and the cause remanded for a new trial, etc.

Absent, Mr. Justice Scott.